630 S.E.2d 55

STATE of West Virginia ex rel., James William GORDON, Petitioner Below, Appellant

v.

Thomas McBRIDE, Warden, Mount Olive Correctional Complex, Respondent Below, Appellee.

No. 32768.

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 11, 2006.

Decided: April 11, 2006.

James William Gordon, Mount Olive Correctional Complex, Mount Olive, pro se.

Darrell V. McGraw, Jr., Esq., Attorney General, Dawn E. Warfield, Esq., Deputy Attorney General, Charleston, for the Appellee.

PER CURIAM.

This case is before this Court upon the *pro se* appeal of James William Gordon from the November 3, 2004, order of the Circuit Court of Wood County, West Virginia, denying him relief in habeas corpus. Gordon was convicted in that Court of two counts of sexual assault in the first degree. In this proceeding, instituted in the Circuit Court under the West Virginia Post–Conviction Habeas Corpus Act, *W.Va.Code*, 53–4A–1(1967), *et seq.*, the sole issue raised concerns the constitutionality of Gordon's term of imprisonment upon the two convictions. Gordon contends that, inasmuch as his scheduled discharge date in 2023 based upon "good time" credit will occur five years prior to his scheduled parole eligibility date in 2028, his release upon good time effectively denies his right to be considered for parole, thereby violating principles of due process and equal protection.

As reflected in the November 3 order, the Circuit Court denied relief without addressing that issue, and, thus, no findings or conclusions thereon were entered. As the State acknowledges, the proceedings below were defective in that regard.[1] Nevertheless, emphasizing that the issue concerning Gordon's imprisonment is purely legal in nature and that the relevant facts are not in dispute, the State urges this Court to affirm the Circuit Court's ruling pursuant to this

---

1. As to the necessity of entering findings and conclusions, the Post–Conviction Habeas Corpus Act, in *W.Va.Code*, 53–4A–7(c) (1967), provides:

    In any order entered in accordance with the provisions of this section, the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided. Syl. pt. 4, *Markley v. Coleman*, 215 W.Va. 729, 601 S.E.2d 49 (2004); syl., *Banks v. Trent*, 206 W.Va. 255, 523 S.E.2d 846 (1999); syl. pt. 1, *State ex rel. Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997).

Court's *de novo* standard of review [2] and, in conjunction therewith, pursuant to syllabus point 3 of *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965), which holds: "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. pt. 4, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18, *cert. denied*, 543 U.S. 938, 125 S.Ct. 325, 160 L.Ed.2d 246 (2004); *State v. Lockhart*, 208 W.Va. 622, 636 n. 15, 542 S.E.2d 443, 457 n. 15 (2000); syl. pt. 3, *State v. Boggess*, 204 W.Va. 267, 512 S.E.2d 189 (1998).[3] In like fashion, as an alternative to reviewing the basis of the Circuit Court's denial of relief, Gordon invites this Court to rule upon the merits of his constitutional challenge.

This Court has before it the petition for appeal, all matters of record and the briefs filed by the parties. As discussed below, this Court is of the opinion that, although the Circuit Court failed to properly consider the ground for relief Gordon advanced, his contention that his imprisonment is unconstitutional in terms of parole consideration is, in these circumstances, a legal issue framed within a given set of facts and is without merit. Thus, under *Barnett, supra*, the Circuit Court's denial of relief in habeas corpus was correct, and the order of November 3, 2004, is affirmed.

**2.** In syllabus point 1 of *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court said: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Rohrbaugh v. State*, 216 W.Va. 298, 607 S.E.2d 404 (2004); syl. pt. 1, *State v. Euman*, 210 W.Va. 519, 558 S.E.2d 319 (2001).

**3.** The Circuit Court denied habeas relief upon the ground that Gordon's assertion was unfounded that, during his plea and sentencing hearings upon the sexual assault counts, the Court misinformed him concerning his appeal rights. That issue, however, was never alleged by Gordon in his petition for a writ of habeas corpus. As stated above, the sole issue he raised concerns the constitutionality of his imprisonment in terms of parole consideration. That issue was not addressed by the Circuit Court.

I.

Factual and Procedural Background

In February 1998, Gordon was charged with committing a number of sexual offenses against two male children when he was over 40 years old. Specifically, the indictment returned by the Wood County grand jury charged him with three counts of sexual assault in the first degree and one count of sexual abuse in the first degree against J.M.S., a child under the age of 11, and with three counts of sexual assault in the first degree and one count of sexual abuse in the first degree against M.J.H., a child also under the age of 11. Counsel was appointed for Gordon, and the indictment was resolved upon Gordon's plea of guilty to two counts of sexual assault in the first degree, i.e., Count 1 concerning J.M.S. and Count 5 concerning M.J.H.

On September 28, 1998, the Circuit Court sentenced Gordon to two 15 to 25 year terms in the penitentiary pursuant to the statutory penalty for sexual assault in the first degree found in *W.Va.Code*, 61–8B–3 (1984).[4] The terms were ordered to be served consecutively, resulting in an effective sentence of 30 to 50 years.[5] No direct appeal to this Court from the convictions or sentence was ever filed.

In October 2004, Gordon filed a *pro se* petition for a writ of habeas corpus in the

**4.** In sentencing Gordon, the Circuit Court applied the 1984 version of *W.Va.Code*, 61–8B–3, because the indictment alleged that all of the offenses against J.M.S. and M.J.H. occurred between 1985 and 1990. Subsection (b) of the 1984 version of *W.Va.Code*, 61–8B–3, provides:

Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than fifteen nor more than twenty-five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than fifteen nor more than twenty-five years.

Subsequent amendments to *W.Va.Code*, 61–8B–3, are not relevant in the context of this case.

**5.** Gordon was also ordered to comply with the provisions of the West Virginia Sex Offender Registration Act, *W.Va.Code*, 15–12–1 (1999), *et seq.*

Circuit Court under the Post–Conviction Habeas Corpus Act, *W.Va.Code*, 53–4A–1 (1967), *et seq*. The sole issue alleged concerned the constitutionality of his imprisonment. Specifically, Gordon asserted that, inasmuch as his scheduled discharge date in 2023 based upon "good time" credit will occur five years prior to his scheduled parole eligibility date in 2028, his release upon good time effectively denies his right to be considered for parole, thereby violating principles of due process and equal protection.[6] As stated above, the Circuit Court denied relief pursuant to the November 3, 2004, order without addressing the issue thus raised. Gordon appeals from that order to this Court.

## II.

### Discussion

In syllabus point 2 of *State v. Lindsey*, 160 W.Va. 284, 233 S.E.2d 734 (1977), this Court held that a person convicted of a crime "shall be considered for parole only after he becomes eligible therefor under the appropriate statute." Pursuant to *W.Va. Code*, 62–12–13(b) (1999), a primary factor of parole eligibility is that the prisoner must have served "the minimum term of his or her indeterminate sentence."[7]

With regard to the specific parole eligibility date, *W.Va.Code*, 62–12–13a (1955), provides that, when the prisoner has received an indeterminate sentence, "the minimum sentence shall be considered as an eligibility date for parole consideration [.]" If the prisoner is serving consecutive sentences, then, under the West Virginia Parole Board's administrative rules, "the time of parole eligibility shall be computed by adding together the minimum terms of the sentences."

*W.Va.C.S.R.* § 92–1–4. In the case of Gordon, serving an effective sentence of 30 to 50 years, his parole eligibility date is scheduled to occur in 2028, thirty years from his sentencing in 1998.[8]

Gordon acknowledges, as *W.Va. Code*, 62–12–13a (1955), further provides, that a parole eligibility date "does not confer in the prisoner the right to be released as of that date." In earlier cases, this Court confirmed that the granting of parole is discretionary, syl. pt. 1, *State ex rel. Patton v. Rubenstein*, 213 W.Va. 296, 582 S.E.2d 743 (2003), and that "there is no automatic right to parole once the prisoner crosses the threshold of eligibility." *State v. Scott*, 214 W.Va. 1, 7, 585 S.E.2d 1, 7 (2003); *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 536, 276 S.E.2d 205, 213 (1981). Gordon contends, however, that an earlier release upon good time, denies his right to appear before the Parole Board to demonstrate his compliance with the purposes of the parole system, i.e., that he has reformed and will be a law abiding member of society. *See, State ex rel. Carper v. West Virginia Parole Board*, 203 W.Va. 583, 586, 509 S.E.2d 864, 867 (1998) (stating that parole hearings constitute a "substantial interest subject to legal protection"), and *Nibert v. Carroll Trucking Company*, 139 W.Va. 583, 588, 82 S.E.2d 445, 449 (1954) (indicating that the purpose of this State's parole system is to afford the prisoner an opportunity to show that he or she has reformed and will be a law abiding member of the community). According to Gordon, the denial of that right renders his sentence under *W.Va.Code*, 61–8B–3 (1984), unconstitutional and requires that his sentence be modified or set aside.

---

6. The rights to due process and equal protection are encompassed in U.S. Const. amend. XIV, § 1, and W.Va. Const. art. III, § 10. *Payne v. Gundy*, 196 W.Va. 82, 87 n. 2, 468 S.E.2d 335, 340 n. 2 (1996); syl. pt. 4, *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989).

7. In addition to serving the minimum term of an indeterminate sentence, *W.Va.Code*, 62–12–13(b), also requires, for parole eligibility, that the prisoner: (1) not be in punitive segregation, (2) has maintained a record of good conduct in prison, (3) has submitted a written parole release plan

and (4) can show that, if released on parole, he or she will not constitute a danger to the community. In the Board's consideration of release on parole, additional requirements are included in *W.Va.Code*, 62–12–13(i) (1999), for prisoners, such as Gordon, who were convicted under the provisions of *W.Va.Code*, 61–8B–1, *et seq.*, relating to sexual offenses.

8. The record includes a memorandum from the Parole Board stating that Gordon's scheduled parole eligibility date is September 20, 2028.

Gordon's entitlement to show that he has reformed and will be a law abiding member of the community, while accurately stated, must also be seen, however, in conjunction with his obligation to comply with the provisions of the West Virginia Sex Offender Registration Act, *W.Va.Code*, 15–12–1 (1999), *et seq.*, imposed as a result of his two convictions of sexual assault in the first degree. *See*, n. 5, *supra.* Although the Registration Act is not intended as an additional punishment, its foundation is based upon the Legislative declaration that "there is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons." *W.Va.Code*, 15–12–1a (2000). Whether he is released upon good time or parole, Gordon must comply with the Act as directed by the Circuit Court at the time of his sentencing.

Moreover, Gordon's comparison of his scheduled release in 2023 upon good time to his scheduled parole consideration in 2028 does not account for an additional provision found in the parole statute, *W.Va.Code*, 62–12–13 (1999), which could theoretically affect either of those release dates. As *W.Va.Code*, 62–12–13(g) (1999), provides: "No provision of this article and none of the rules adopted hereunder are intended or may be construed to contravene, limit or otherwise interfere with or affect the authority of the Governor to grant pardons and reprieves, commute sentences, remit fines or otherwise exercise his or her constitutional powers of executive clemency." *See, State ex rel. Forbes v. Caperton*, 198 W.Va. 474, 481 S.E.2d 780 (1996) (discussing the empowerment of the Governor with that authority under W.Va. Const. art. VII, § 11).[9] Action by the Governor in that regard would directly impact the status of a prisoner in terms of the requirements for parole eligibility set forth in *W.Va.Code*, 62–12–13 (1999).

Also lacking in certainty is Gordon's assumption that he will be released upon good time prior to his parole eligibility date.[10] Pursuant to *W.Va.Code*, 28–5–27 (1984), the accumulation of good time is dependent upon the prisoner's behavior or "good conduct" while incarcerated. *State ex rel. Valentine v. Watkins*, 208 W.Va. 26, 32, 537 S.E.2d 647, 653 (2000). In addition to encouraging rehabilitation, it rewards the obedient. *Id; Woodring v. Whyte*, 161 W.Va. 262, 275, 242 S.E.2d 238, 246 (1978). Thus, while Gordon may assert that he is likely to continue to accumulate good time, he cannot say, at this point, that he will be released upon good time as a matter of law in 2023. In addition, accumulated good time is subject to forfeiture and revocation. As stated in *W.Va.Code*, 28–5–27(f) (1984), for a violation of disciplinary rules, "any part or all of the good time which has been granted to such inmate pursuant to this section may be forfeited and revoked by the warden or superintendent of the institution in which the violation occurred." Accordingly, it is not necessarily true that Gordon will be released upon good time prior to his appearance before the Parole Board.

Finally, assuming that Gordon will receive the full amount of good time and be released in 2023, his constitutional challenge is deprived of significance by the fact that such a release is well before the vesting of his eligibility under *W.Va.Code*, 62–12–13 (1999), to appear before the Parole Board and be considered for parole. Therefore, by being released upon good time in 2023, Gordon will not be denied a right that, at that time, he was eligible to receive. Syllabus point 2 of *Lindsey*, quoted above, states that a person convicted of a crime shall be considered for parole "only after he becomes eligible there-

---

9. W.Va. Const. art. VII, § 11, provides:

The governor shall have power to remit fines and penalties in such cases and under such regulations as may be prescribed by law; to commute capital punishment and, except where the prosecution has been carried on by the house of delegates, to grant reprieves and pardons after conviction; but he shall communicate to the legislature at each session the particulars of every case of fine or penalty remitted, of punishment commuted and of reprieve or pardon granted, with his reasons therefor.

10. According to the West Virginia Division of Corrections, Gordon's scheduled release upon good time is September 24, 2023.

fore" under the appropriate statute. Pursuant to *W.Va.Code*, 62–12–13(b) (1999), to be eligible for parole, the prisoner must, *inter alia*, have served "the minimum term of his or her indeterminate sentence." *See*, n. 7, *supra*. And, as stated in *W.Va.Code*, 62–12–13a (1955), the minimum sentence of an indeterminate term "shall be considered as an eligibility date for parole consideration [.]" In 2023, Gordon will not be eligible for parole consideration, and a release then upon good time constitutes neither an additional punishment nor an extension of the requirements for parole eligibility. *See, Adkins v. Bordenkircher*, 164 W.Va. 292, 296–97, 262 S.E.2d 885, 887 (1980) (indicating that parole eligibility conditions cannot be retroactively altered to the detriment of the prisoner).

Gordon's contention that his release upon good time unconstitutionally deprives him of his right to appear before the Parole Board, therefore, amounts to speculation upon a contingency, namely, an assumption that he will continue to accumulate good time for release in 2023 at which time his right to appear before the Parole Board, based upon completion of the eligibility requirements set forth in *W.Va.Code*, 62–12–13 (1999), will not have fully accrued.

## III.

### Conclusion

Upon all of the above, this Court concludes that, although the Circuit Court failed to properly consider the ground for relief Gordon advanced, his contention that his imprisonment is unconstitutional in terms of his parole consideration raises a legal issue framed within a given set of facts. As such, this Court is of the opinion that there was no deprivation of Gordon's rights to due process and equal protection and that his contention is without merit. Therefore, under the principles of *Barnett* set forth above, the denial of relief by the Circuit Court of Wood County was correct, and its order of November 3, 2004, is affirmed.[11]

Affirmed

---

**11.** *See also, Murphy v. Smallridge*, 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–69 (1996) (indicating that an appellate court is not limited to the grounds relied upon by a circuit court but may affirm or reverse on any independently sufficient ground).